# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the<br>Personal Restraint Petition of:<br><br>JOHNNY CASSANOVA TWITTY,<br><br>        Petitioner. | No.58999-1-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Johnny Cassanova Twitty challenges the sentence imposed for his convictions of attempted first degree murder and first degree unlawful possession of a firearm (UPOF). Twitty argues that the trial court erred because it included a juvenile adjudication when calculating his offender score.

RCW 9.94A.525(1)(b), which became effective after Twitty was sentenced, states that most juvenile adjudications no longer can be included in a defendant's offender score. Twitty does not argue that RCW 9.94A.525(1)(b) applies to him. Instead, he argues that including juvenile adjudications in an offender score constitutes cruel punishment in violation of article I, section 14 of the Washington Constitution.

We hold that the inclusion of certain juvenile adjudications in offender scores is not unconstitutional because under the categorical bar analysis, there is no objective indicia of a national consensus against the practice of including juvenile adjudications in offender score calculations and their inclusion serves legitimate penological goals.

Accordingly, we deny Twitty's PRP.

FACTS

In 2008, a jury found Twitty guilty of attempted first degree murder and first degree UPOF. The conviction arose out of an altercation between Twitty and another man during which the other man was shot five to seven times. Twitty was sentenced to 316 months plus 60 months for a firearm sentencing enhancement for a total of 376 months in confinement. Twitty's criminal history included juvenile adjudications for unlawful possession of a controlled substance and second degree assault.

In March 2021, Twitty filed a CrR 7.8(b)(2) motion for relief based on the inclusion of his adjudication for unlawful possession of a controlled substance in light of *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The trial court vacated Twitty's 2008 sentence and ordered that he be resentenced excluding the unlawful possession of a controlled substance adjudication from his criminal history.

At resentencing in March 2023, Twitty's offender score included the juvenile adjudication for second degree assault and several adult convictions, resulting in an offender score of 6 on the first degree attempted murder conviction and 5 on the first degree UPOF conviction. The standard sentencing ranges were 234-316 months for attempted murder and 41-54 months for UPOF. The State recommended a sentence at the high end of the range for the attempted murder conviction – 316 months plus 60 months for the firearm sentencing enhancement. Twitty requested an exceptional sentence below the standard range of a total of 240 months.

The trial court imposed a standard range sentence. The court sentenced Twitty to 278 months in confinement on the first degree attempted murder conviction plus an additional 60

months in confinement for a firearm sentencing enhancement, and 54 months in confinement on the first degree UPOF conviction.

Twitty appealed his 2023 judgment and sentence. He argued that the trial court erred when it failed to apply RCW 9.94A.525(1)(b) prospectively to his case, and that the court should remand for resentencing with an offender score that does not include his juvenile second degree assault conviction. *State v. Twitty*, No. 58738-6-II, slip op. at 7 (Aug. 6, 2024) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2058738-6-II%20Unpublished%20Opinion.pdf. This court rejected this argument and affirmed Twitty's sentence. *Id.* at 17.

Twitty files this PRP, challenging the constitutionality of including a prior juvenile conviction for second degree assault in his offender score.

ANALYSIS

A.    PRP PRINCIPLES

To prevail in a PRP, the petitioner must establish by a preponderance of the evidence (1) a constitutional error that resulted in actual and substantial prejudice or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). Here, Twitty asserts a constitutional error – violation of article I, section 14 of the Washington Constitution.

Establishing "actual and substantial prejudice" means more than merely showing the possibility of prejudice; the petitioner must establish that if the alleged error had not occurred, the outcome more likely than not would have been different. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315-16, 440 P.3d 978 (2019). When sentencing is involved, the petitioner must show that their sentence would have been shorter but for the alleged error. *Id.* at 316.

B.    CRUEL PUNISHMENT CHALLENGE

Twitty argues that the inclusion of his juvenile second degree assault adjudication in his offender score violates the cruel punishment provision of article I, section 14.  We disagree.

1.    Legal Principles

Twitty argues that the use of juvenile adjudications to calculate offender scores is categorically unconstitutional under article I, section 14.  There are two steps in the categorical bar analysis. First, we must determine "whether there are 'objective indicia of a national consensus against the sentencing practice[.]' " *State v. Reynolds*, 2 Wn.3d 195, 204, 535 P.3d 427 (2023).  (quoting *State v. Bassett*, 192 Wn.2d 67, 84, 428 P.3d 343 (2018)).  We determine whether there is a national consensus "by looking at the 'objective indicia of society's standards, as expressed in legislative enactments and state practice.' " *Reynolds*, 2 Wn.3d at 204 (quoting *Graham v. Florida*, 560 U.S. 48, 61, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)).  " 'It is not so much the number of these States that is significant, but the consistency of the direction of change.' " *Reynolds*, 2 Wn.3d at 204 (quoting *Bassett*, 192 Wn.2d at 86).

Second, we must address " 'whether our independent judgment, based on controlling precedent and our understanding and interpretation of the cruel punishment provision's text, history, and purpose, weighs against the sentencing practice.' " *Reynolds*, 2 Wn.3d at 204 (quoting *Bassett*, 192 Wn.2d at 83).  We consider the " 'culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question' and 'whether the challenged sentencing practice serves legitimate penological goals.' " *Reynolds*, 2 Wn.3d at 207 (quoting *Bassett*, 192 Wn.2d at 87).  "The four recognized 'legitimate penological goals' are retribution, deterrence, incapacitation, and rehabilitation." *Reynolds*, 2 Wn.3d at 207 (quoting *Bassett*, 192 Wn.2d at 87.)

4

We review constitutional challenges de novo. *State v. Ross*, 28 Wn. App. 2d 644, 646, 537 P.3d 1114 (2023), *review denied*, 2 Wn.3d 1026, 544 P.3d 30 (2024).

2.    Analysis

Twitty argues that article I, section 14 requires a retroactive prohibition against including juvenile adjudications in offender scores. He points to Connecticut and Oregon as examples. The Connecticut legislature abolished the death penalty for future crimes, leaving people still on death row to face execution. *State v. Santiago*, 318 Conn. 1, 9, 122 A.3d 1 (2015). The Connecticut Supreme Court barred the executions from taking place, and held that the death penalty did not comport with Connecticut's standards of decency. *Id*. at 10. And in Oregon, the legislature passed a law prospectively reclassifying the crimes that previously had constituted aggravated murder. *State v. Bartol*, 368 Or. 598, 600, 496 P.3d 1013 (2021). The Oregon Supreme Court held that similarly situated people on death row could not be executed. *Id.* We note that both cases involved the death penalty, not standard range sentences.

Twitty asserts that the Washington legislature concluded in RCW 9.94A.525(1)(b) that the use of juvenile adjudications to calculate adult sentences does not result in a just and fair sentence because the evidence shows that juveniles' decision making differs significantly from adults, defendants in juvenile adjudications do no not have the right to a jury trial, and those facts taken together result in a racially disproportionate impact of including juvenile adjudications in offender scores. He claims that the enactment of RCW 9.94A.525(1)(b) shows a consensus in Washington against the practice of including juvenile adjudications in offender scores.

However, Twitty cannot satisfy either step of the article I, section 14 categorical bar analysis. First, Twitty does not show that there is a national consensus against the inclusion of juvenile adjudications in adult sentencing, the first part of the categorical bar analysis. *See*

5

*Reynolds*, 2 Wn.3d at 204. In fact, he concedes the point that there is no national consensus because there is a wide diversity in the restrictions placed on juvenile adjudications among the states.

Twitty points to the difficulty of measuring the use or disuse of juvenile adjudications among the states because of the diversity of approaches that each state takes to the use of juvenile adjudications. He argues that we can disregard the national consensus requirement in favor of a local consensus. He asks us to revise the constitutional test and follow Washington trends and practices to inform the constitutional analysis.

This is a compelling argument; interpretation of the Washington Constitution should not necessarily depend on what other states are doing. And Washington courts have acknowledged the different culpabilities between children and adults. *See State v. Houston-Sconiers*, 188 Wn.2d 1, 18, 391 P.3d 409 (2017) (holding that sentencing standards for juveniles are different than those of adults because "children are different"); *see also Bassett*, 192 Wn.2d at 81 (holding that children warrant special protections in sentencing).

However, the enactment of RCW 9.94A.525(1)(b) does not show that there is a consensus in Washington that juvenile adjudications cannot be included in offender scores. RCW 9.94A.525(1)(b) reflects only a legislative decision that certain juvenile adjudications no longer should be included in offender scores, not that the prior rule was improper or unlawful. The legislature could have made RCW 9.94A.525(1)(b) retroactive, but elected not to. And the legislature did not completely ban the consideration of juvenile adjudications from offender scores. *See* RCW 9.94A.525(1)(b) (juvenile court adjudications of guilty for first or second degree murder and class A felony sex offenses may be included in offender scores).

6

Further, we are not in a position to alter the categorical bar analysis that has been adopted by the Supreme Court. *See State v. Rohleder*, 31 Wn. App. 2d 492, 494, 550 P.3d 1042 (2024). Any change in that analysis must come from the Supreme Court.

Second, Twitty does not even address why we should use our independent judgment to make this sentencing practice unlawful, the second part of the categorical bar analysis. For example, he fails to show how the inclusion of juvenile adjudications in offender score calculations does not serve legitimate penological goals. *See Reynolds*, 2 Wn.3d at 204.

Twitty's sentence was not for his juvenile adjudication, but for his current adult offense. *See Id.* at 208. The United States Supreme Court stated that "a second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation." *United State v. Rodriquez*, 553 U.S. 377, 385, 128 S. Ct. 1783, 170 L.Ed.2d 719 (2008). Twitty committed attempted first degree murder as an adult, and it was not his first offense. Because this was a subsequent offense, the principle that an increased sentence is warranted "for purposes of deterrence and incapacitation" applies. *Id*.

Accordingly, we reject Twitty's argument that the inclusion of his juvenile second degree assault adjudication in his offender score violates the cruel punishment provision of article I, section 14.

CONCLUSION

We deny Twitty's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

CRUSER, C.J.

PRICE, J.