*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0094p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

―――――――――――

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            *v.*

JAMES M. KEARNEY,
            *Defendant-Appellant.*

> No. 10-1532

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20143-001—Arthur J. Tarnow, District Judge.

Argued: November 18, 2011

Decided and Filed: April 5, 2012

Before: MERRITT, CLAY, and SUTTON, Circuit Judges.

―――――――――――

**COUNSEL**

**ARGUED:** Joseph A. Niskar, Southfield, Michigan, for Appellant. Graham L. Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Joseph A. Niskar, Southfield, Michigan, for Appellant. Graham L. Teall, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

        CLAY, J., delivered the opinion of the court, in which SUTTON, J., joined. MERRITT, J. (pp. 11-13), delivered a separate dissenting opinion.

―――――――――――

**OPINION**

―――――――――――

        CLAY, Circuit Judge. Defendant James M. Kearney pleaded guilty to one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Kearney challenges the district court's decision to

enhance his sentence pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).  For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

A federal grand jury indicted Kearney on one count of possession with intent to distribute crack cocaine and one count of being a felon in possession of a firearm.  On October 27, 2009, Kearney pleaded guilty to the firearm offense, pursuant to a written plea agreement.  The plea agreement provided for a sentencing range of 70 to 87 months imprisonment under the Sentencing Guidelines (the "Guidelines" or USSG).  However, the parties also expressly acknowledged that this range could be altered if the sentencing judge applied an enhancement pursuant to ACCA.

Shortly thereafter, Kearney obtained new representation, and he moved to set aside his plea agreement.  Kearney argued that his prior counsel should have preserved the right to argue that he did not qualify as an armed career criminal.  The district court granted Kearney's motion, set aside the written plea agreement, and left Kearney's guilty plea intact.  The ruling allowed Kearney to argue against ACCA enhancement and preserved Kearney's right to appeal his sentence.

On March 29, 2010, the district court held another sentencing hearing.  At the second hearing, Kearney pleaded guilty to the narcotics offense.  He also argued that he was not an armed career criminal because two of his prior convictions for domestic violence did not qualify as "violent felonies" under ACCA.  He contended that his domestic violence convictions were misdemeanors under Michigan law, with each carrying a possible maximum sentence of 93 days imprisonment.  However, Kearney conceded that the Michigan courts had enhanced both convictions pursuant to a state recidivism provision.  As a result, Kearney actually faced a two year maximum sentence on each charge.[1]  However, Kearney suggested that these enhancements ought to be

---

[1] The PSR indicates that Kearney was previously convicted of two counts of domestic violence in 1995, which provided the basis for the state enhancement.

disregarded for ACCA's purposes, and he suggested that the sentencing judge consider these convictions as though he was sentenced only on his base offense conduct.

The district court rejected Kearney's argument, applied an ACCA enhancement, and sentenced Kearney to the statutory mandatory minimum of 180 months imprisonment on the firearms offense, to be served concurrent to a one day sentence on the narcotics offense.

Kearney timely appealed.  Original jurisdiction exists pursuant to 18 U.S.C. § 3231.  Appellate jurisdiction exists under 28 U.S.C. § 1291.

## ANALYSIS

### A.    Statutory Framework

This Court reviews *de novo* a district court's determination that an offense is a "violent felony" under ACCA.  *United States v. Benton*, 639 F.3d 723, 729 (6th Cir. 2011) (internal citations omitted).

Title 18, Section 922(g)(1) of the United States Code makes it a crime for a convicted felon to possess a firearm.  Although the maximum sentence for a felon-in-possession charge is ten years imprisonment, ACCA enhances the applicable sentence to a fifteen year mandatory minimum in the case of a defendant who has three or more prior convictions for a "violent felony" or a "serious drug offense."  18 U.S.C. § 924(e).

ACCA further defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B).  Thus, there are three types of crimes that qualify as violent felonies under ACCA: those having an element of physical force under subsection (i); the enumerated offenses under subsection (ii); and conduct that otherwise presents a "serious potential risk of physical injury to another" under the "residual clause" of

subsection (ii). *See United States v. Mansur*, 375 F. App'x 458, 463 (6th Cir. 2010) (citing *United States v. Young*, 580 F.3d 373, 377 (6th Cir. 2009)).

In order for an offense to be counted under § 924(e)(2)(B)(ii)'s residual clause, the crime must be "roughly similar, in kind as well as in degree of risk posed," to the felonies enumerated under the statute. *Begay v. United States*, 553 U.S. 137, 143 (2008). Most ACCA qualifying offenses thus involve "purposeful, violent, and aggressive conduct." *See id*. at 144–45. However, the Supreme Court recently clarified that an offense may also qualify as a "violent felony" by reference to the risk of harm and the *mens rea* involved. *Sykes v. United States*, 131 S. Ct. 2267, 2275 (2011); *see also Chambers v. United States*, 555 U.S. 122, 127–28 (2009).

In determining whether a prior conviction meets these standards, we use a two step analysis. First, we apply a "categorical approach," looking to the statutory definition of the prior offense and not to the particular facts underlying the defendant's conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). If it is possible to violate the statute in a way that would constitute a "violent felony" and in a way that would not, we apply a "modified categorical approach," in which we consider whether the indictment, guilty plea, or similar documents necessarily establish the nature of the prior conviction. *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

Michigan's domestic violence statute criminalizes the assault or assault and battery of a person with whom one has a domestic relationship. Mich. Comp. Laws § 750.81(2). An individual who commits domestic violence is guilty of a misdemeanor punishable by imprisonment of not more than 93 days. *Id*. Section 750.81 is a specific intent crime, proved by showing: (1) the commission of an assault or an assault and battery; (2) one of the statute's enumerated domestic relationships; and (3) the intent to either batter the victim or to place the victim in reasonable apprehension of being

battered.  *See People v. Cameron*, 806 N.W.2d 371, 379 (Mich. Ct. App. 2011); *People v. Corbiere*, 559 N.W.2d 666, 669 (Mich. Ct. App. 1996).[2]

Domestic violence recidivists receive an enhanced penalty for subsequent § 750.81 violations.  An individual with one prior domestic violence conviction faces imprisonment of not more than one year.  Mich. Comp. Laws § 750.81(3) ("second offense" provision).  An individual with two or more domestic violence convictions faces imprisonment of not more than two years.  Mich. Comp. Laws § 750.81(4) ("third or subsequent offense" provision).[3]

## B.      Kearney's Prior Offenses

In this case, the district court relied on the uncontested Presentence Report (PSR) to determine Kearney's applicable sentencing range under the Guidelines.[4]  The following Michigan convictions were used as the basis for ACCA enhancement: (1) a 1995 conviction for felonious assault; (2) a 2000 conviction for assault with a dangerous weapon; (3) a 2000 conviction for domestic violence, third or subsequent offense; and (4) another 2000 conviction for domestic violence, third or subsequent offense.  In contesting ACCA enhancement, Kearney only challenges the two domestic violence convictions.[5]

---

[2]Under Michigan law, a battery is defined as the "intentional, unconsented, and harmful or offensive touching of the person of another, or of something closely connected with the person." *Cameron*, 806 N.W.2d at 379.  It does not matter whether the touching actually caused an injury.  *Id.*  An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."  *Id.* (internal quotation omitted).  "[E]very battery necessarily includes an assault because a battery is the very consummation of the assault."  *Id.* (internal quotation omitted).

[3]Additionally, the statute provides for increasing monetary fines for each domestic violence conviction.  *See* Mich. Comp. Laws. § 750.81.

[4]Typically, it is improper for a district court to rely solely on a PSR, even if uncontested, to determine whether an ACCA enhancement applies.  *See United States v. Wynn*, 579 F.3d 567, 576–77 (6th Cir. 2009).  However, Kearney has not raised this claim, and therefore we do not address it.

[5]Although each of the 2000 convictions were sentenced on the same day, they count separately for purposes of calculating an ACCA enhancement because the conduct underlying the convictions was committed on "occasions different from one another."  *See, e.g. United States v.Thomson*, 268 F. App'x 430, 435–36 n.1 (6th Cir. 2008); *United States v. Paul*, 156 F.3d 403, 404 (2d Cir. 1998) (applying USSG § 4B1.1).

The PSR indicates that the domestic violence charges stemmed from two separate incidents. In the first, Kearney punched, kicked, and stomped his victim. In the second, Kearney struck his victim in the head with an unknown object. Kearney does not dispute these allegations. The PSR also indicates the consolidated sentence Kearney received on these charges. Although Kearney originally received two years probation, at some point he violated the terms of his release. The state judge revoked probation and sentenced Kearney to two years imprisonment. Kearney ultimately served the full two year term.

## C.    Application

Kearney presents a question of first impression for this Court: whether a prior state conviction can qualify as a predicate "violent felony" under ACCA if the offense was enhanced pursuant to a state recidivism provision.

The government contends that, although this issue is a novel one, the Supreme Court's decision in *United States v. Rodriquez*, 553 U.S. 377 (2008), nevertheless controls. In *Rodriquez*, the Supreme Court addressed this issue in the context of ACCA's serious drug offense provision. The defendant had several prior drug convictions, which if considered only by their base offense conduct, would not have met ACCA's definition of a "serious drug offense" as one punishable by "a maximum term of imprisonment of ten years or more." *See id.* at 380–81 (citing § 924(e)(2)(A)). However, the defendant's prior convictions had been enhanced by the state court on the basis of recidivism. If the state enhancements were considered, the convictions qualified towards an ACCA enhancement. *Id.* at 381.

In resolving this issue, the Supreme Court emphasized ACCA's plain text, the statute's legislative intent, and the importance of interpreting ACCA consistently with our broader sentencing regime. The Supreme Court held that evaluating a predicate conviction under the serious drug offense provision requires a sentencing court to take into account prior recidivism enhancements. *Id.* at 393.

First, the Court found that a natural reading of ACCA's language compelled its holding. The Court found that "the maximum term of imprisonment" was defined not only by the base offense conduct, but also as the sentence was applied to the habitual offender. *Id*. at 383–84. To define ACCA's text otherwise, the Court reasoned, would divorce the statute's definition of a "maximum term of imprisonment" from how that phrase was "customarily understood by participants in the criminal justice process." *Id*. at 383.

Additionally, *Rodriquez* looked to ACCA's "manifest purpose." *Id*. at 385. The Court found that ACCA is itself a recidivism statute reflecting the notion that repeat offenses are generally more serious than first offenses. *Id*. at 385–86. The Court decided that Congress deliberately chose to bootstrap ACCA's enhancement onto our preexisting patchwork of state and federal sentencing structures in the pursuit of discouraging recidivists, and the Court found it unlikely that Congress did not take preexisting sentencing schemes into consideration when drafting ACCA. *Id*.

The Court dismissed the defendant's suggestion that compounding an ACCA enhancement on top of a preexisting enhancement would overemphasize a predicate offense. *Id*. at 386. Instead, the Court suggested that prior enhancements might actually shed light on the "seriousness" of a predicate drug offense. *See id*. at 388.

Lastly, the Court noted that the "maximum term" language is not unique to ACCA. In other sentencing contexts, the Court found that the common interpretation of such phrasing includes underlying enhancements. *See id*. at 392. Thus, the Court saw no reason to interpret ACCA's language differently.

*Rodriquez*'s rationales apply with equal force in this context. The structure of ACCA's violent felony provision closely tracks that of its provision for serious drug offenses, and there is no reason to believe that the text is any less plain in this context. We agree that Congress' intent to define a predicate offense with reference to underlying enhancements is clear and that there is no compelling justification to interpret ACCA out of step with other sentencing enhancements.

Kearney argues, however, that the Supreme Court's subsequent decision in *Johnson v. United States*, 130 S. Ct. 1265 (2010), casts doubt on *Rodriquez*'s continued force. *Johnson* involved a defendant with a prior conviction for simple battery under Florida law, ordinarily a first-degree misdemeanor, but enhanced to a third-degree felony by the state's recidivism statute. Although the case was ultimately decided on a different basis, the Court touched upon the dangers of compounding an ACCA enhancement onto a common-law misdemeanor when defining a predicate violent felony. In rejecting the government's argument that Florida's simple battery statute was a violent felony under the categorical approach, the Court stated, in pertinent part:

> It is significant, moreover, that the meaning of "physical force" the Government would seek to import into this definition of "violent felony" is a meaning derived from a common-law *misdemeanor*. At common law, battery—*all* battery, and not merely battery by the merest touching—was a misdemeanor, not a felony . . . . [T]he dividing line between misdemeanors and felonies has shifted over time. But even today a simple battery—whether of the mere-touching or bodily-injury variety—generally is punishable as a misdemeanor. . . . It is unlikely that Congress would select as a term of art defining "violent felony" a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor. Of course, "physical force" *can* be given its common-law misdemeanor meaning by artful language, but here the only text that can be claimed to accomplish that is the phrase "physical force" itself. Since, as we have seen, that is readily (indeed, much more readily) taken to describe *violent* force, there is no reason to define "violent felony" by reference to a nonviolent misdemeanor.

*Id*. at 1271–72. (internal citations and quotations omitted, italicized emphasis in original, underlined emphasis added).

Kearney argues that this language reveals a thematic tension between ACCA's serious drug offense provision and its violent felony provision. He contends *Johnson* justifies treating ACCA's triggering offenses differently, because while *Rodriquez* suggested that prior enhancements might clarify the seriousness of a drug offense, *Johnson* implies that the opposite is true when evaluating the violent felony provision.

Kearney's point is not without merit. Undoubtedly, the violent felony provision embraces a far wider class of conduct than does the serious drug offense provision, and the provisions' different phrasings suggest that ACCA's triggering provisions are somewhat distinguishable, both as defined and by their statutory intent. Moreover, we note that *Rodriquez* predates *Begay*, *Sykes*, and the flurry of cases spawned by our continued efforts to grapple with ACCA's violent felony provision.[6] These considerations advise against impetuously applying *Rodriquez* without further reflection.

Despite these distinctions, however, we now hold that a sentencing court should reference underlying enhancements when evaluating whether a predicate offense meets ACCA's violent felony definition. Textualism, legislative intent, and statutory consistency all drive our decision. For the reasons explained in *Rodriquez*, our holding best expresses the plain language of the ACCA and comports with our understanding of the statute's legislative intent. Additionally, our decision promotes consistency with the serious drug offense provision. From a broader sentencing perspective, our decision interprets ACCA in line with the many other provisions of the Guidelines that turn on whether prior conduct was punishable by a sentence exceeding one year. In such cases, we "routinely" take prior convictions into account. *See United States v. Trotter*, 270 F.3d 1150, 1154–55 (7th Cir. 2001).

According to Kearney, our holding creates the possibility that a defendant will be sentenced under ACCA too severely for prior conduct that would have carried a penalty of no more than a year at common law. Kearney overstates that risk. His concern is fully answered by careful application of the modified categorical approach, a resolution that *Johnson* itself suggests for difficult cases such as these. *See Johnson*,

---

[6]We are aware of the chorus of criticisms swelling around the violent felony provision. *See, e.g., Sykes*, 131 S.Ct. at 2288 (Scalia, J., dissenting) (asserting that ACCA's violent felony provision should be limited to its enumerated crimes until Congress tightens the statutory language); *United States v. Vann*, 660 F.3d 771, 801 (4th Cir. 2011) (Wilkinson, J., concurring in the judgment) (highlighting the difficulties the Fourth Circuit has experienced in applying ACCA's residual clause); *id*. at 787 (Agee, J., concurring) (same).

The dissent misconstrues our recognition of these criticisms as an admission that the Act should not apply to this case. However, our point is not that ACCA fails to apply here. Rather, we simply note these criticisms to highlight that, whatever latent problems may exist with the Act, the responsibility for correcting them continues to lie with the legislature, and not with this Court.

130 S. Ct. at 1273. An offense that has been subject to prior enhancement may, indeed, be less likely to meet *Begay* and *Sykes*' standards. However, close adherence to the approach outlined in *Taylor*, *Chambers*, *Shepard*, and their progeny should ensure that convictions which do not meet the violent felony definition will not be counted towards an ACCA enhancement.

Applying our holding to the case before us, we find that the district court did not err in counting Kearney's domestic violence convictions as predicate violent felonies under ACCA. On both domestic violence convictions, Kearney was charged and convicted under Michigan's recidivism statute, which provided for imprisonment for a term exceeding one year. Kearney in fact served a full two year term of imprisonment on the state charges.[7] Moreover, applying *Taylor*'s modified categorical approach to these convictions demonstrates that Kearney's conduct was indeed purposeful, violent, and aggressive. Therefore, these convictions qualified as predicate violent felonies, and the district court did not err in enhancing Kearney's conviction pursuant to ACCA.

### CONCLUSION

For the foregoing reasons, we **AFFIRM**.

---

[7] Regardless of what the state judge intended by applying the recidivism enhancement—an argument regarding the state judge's intent that the dissent makes without any apparent support—it remains the case that Kearney was convicted pursuant to the enhancement and that he actually served a two year prison term on the charges.

_____

**DISSENT**

_____

MERRITT, Circuit Judge, dissenting.  In *Johnson v. United States*, 130 S. Ct. 1265 (2010), the question was whether a defendant was subject to the mandatory 15-year sentence required by the Armed Career Criminal Act when the defendant's predicate state offense under the federal Act was described by the Supreme Court as follows:

> That conviction was for simple battery under Florida law, which ordinarily is a first- degree misdemeanor, Fla. Stat. § 784.03(1)(b), but is a third-degree felony for a defendant who (like Johnson) has been convicted of battery (even simple battery) before, § 784.03(2).

*Id*. at 1268-69.  In the instant case, we have a similar situation of conversion of a simple, state battery misdemeanor statute into a felony for the second offense.  The Armed Career Criminal Act requires that the predicate offense be "a violent felony."  The Court held that such a state misdemeanor offense enhanced into a felony offense because of a previous similar misdemeanor is not the type of predicate offense contemplated by the federal Act in question.  Relying on the common law background of the battery offense, the Supreme Court rejected the government's effort to mandate a 15-year sentence and reversed the mandatory sentence imposed by the lower federal courts for reasons that apply to the instant case, as well:

> It is significant, moreover, that the meaning of "physical force" the Government would seek to import into this definition of "violent felony" is a meaning derived from a common-law *misdemeanor*.  At common law, battery—*all* battery, and not merely battery by the merest touching—was a misdemeanor, not a felony.
>
> . . . .
>
> It is unlikely that Congress would select as a term of art defining "violent felony" a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor.

*Id*. at 1271-72.

Likewise, here we have a Michigan misdemeanor domestic abuse statute that can be violated in many ways, including psychological abuse, unwanted touching and pushing, as well as more forceful conduct. My colleagues go along with reclassifying or shifting a state misdemeanor domestic abuse statute into a violent felony statute because a Michigan trial judge simply enhanced the domestic relations violation in order to give the prisoner two years of parole supervision rather than one year. The state judge did not think that this crime deserved any time in prison at all but wanted to keep the defendant under supervision for longer than one year. Like the majority in the *Johnson* case, I do not believe that Congress intended for the Armed Career Criminal Act to be triggered under a state misdemeanor statute that simply authorizes a state judge to make this kind of enhancement. Turning misdemeanor domestic abuse statutes into predicate offenses under the federal 15-year statute when the wife or husband violates the local statute twice seems a far cry from the type of recidivism Congress had in mind when it decided to take the sentencing process away from the federal sentencing judge and impose a long mandatory sentence.

The instant case is, if anything, better for the defendant, Kearney, than in the Supreme Court's *Johnson* case. Two things are clear in the instant case. *First*, the state trial judge enhanced the common law misdemeanor statute from a one year to a two year sentencing statute only in order to give Kearney a two year probationary sentence with no jail time. The judge thought that it would be better for the prisoner to be under supervision for longer than one year. *Second*, because the prisoner received a second year of probationary supervision in the state court, our court approves the sentence of the district court automatically adding almost 10 more years to his federal sentence.

If the Supreme Court's holding and reasoning in *Johnson* is not sufficient to convince my colleagues that a contrary result is required, what about the Rule of Lenity? My colleagues seem to agree in footnote 6 that the federal Act is by no means clear in requiring the imposition of an extra 10 years' incarceration in this case. I think we should reverse and remand and leave the sentence in the hands of the district judge to exercise his normal sentencing discretion. Otherwise, the Armed Career Criminal Act

is vastly over inclusive and automatically makes domestic abuse a predicate offense whenever it is repeated a second time.  This kind of formalistic reasoning has nothing to do with meting out fair retributive punishment because it does not allow the sentencing judge to impose  a punishment that fits the crime or fits the overarching principle of the Sentencing Reform Act:  the imposition of a sentence "not greater than necessary," 18 U.S.C. § 5335(a).