NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2508
_____

UNITED STATES OF AMERICA

v.

REGINALD L. LOMAX, JR.,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-15-cr-00263-001)
District Judge: Honorable William W. Caldwell
_____

Argued June 12, 2018
Before: AMBRO, JORDAN, and HARDIMAN, *Circuit Judges*.

(Filed: August 10, 2018)

Ronald A. Krauss
Quin M. Sorenson [Argued]
Office of Federal Public Defender
100 Chestnut Street
Suite 306
Harrisburg, PA 17101
        *Counsel for Appellant*

James T. Clancy [Argued]
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
        *Counsel for Appellee*

_____

OPINION[*]

_____

HARDIMAN, *Circuit Judge*.

Reginald Lomax, Jr. appeals his judgment of conviction and sentence following a conditional plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e). We will affirm.

I[1]

In conjunction with his guilty plea, Lomax reserved the right to challenge the denial of his motion to suppress evidence found by York City police when they searched his jacket incident to arrest. The constitutionality of that search—which yielded a gun and drugs—turns on a factual dispute as to the location of the jacket at the time of the arrest. In the District Court, Lomax and the two arresting police officers gave divergent accounts of the search. After hearing the testimony of Lomax and the officers, the District Court

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2

found as a matter of fact that when Officer James Knarr came upon Lomax and ordered him to put his hands behind his back, Lomax first "t[ook] off the jacket and set it aside." *United States v. Lomax*, 2016 WL 2347102, at \*4 (M.D. Pa. May 4, 2016). After handcuffing Lomax, Knarr picked up the jacket, which "was within [Lomax]'s reach," and felt a gun in one pocket and a bag of drugs in the other. *Id.* Based on those factual findings, the District Court determined that the jacket was within Lomax's immediate control, and under those circumstances the search of the jacket was reasonable. *Id.*; *see Arizona v. Gant*, 556 U.S. 332, 343 (2009) (holding that a warrantless vehicle search incident to arrest is justified "when the arrestee is unsecured and within reaching distance of the passenger compartment"). Accordingly, suppression of the evidence was not warranted.

The District Court relied principally on cases citing our decision in *United States v. Shakir*, 616 F.3d 315 (3d Cir. 2010). In *Shakir*, we applied the *Gant* rule to a protective sweep of a bag an arrestee had dropped beside him during his arrest in a hotel lobby. *Id.* at 316–18. The key question was whether the handcuffed arrestee "retained sufficient potential access to his bag to justify a warrantless search." *Id.* at 319. We held that he did, because even though he "was handcuffed and guarded by two policemen, [his] bag was literally at his feet, so it was accessible if he had dropped to the floor." *Id.* at 321.

Lomax finds himself on even weaker footing than the arrestee in *Shakir*, who was not suspected of having a weapon. *See id.* at 316–17. Here, Knarr had been advised that

3

Lomax had a gun, and the District Court found as a matter of fact that "Knarr was by himself with [Lomax], in a small room, and the jacket was within [Lomax]'s reach," *Lomax*, 2016 WL 2347102, at \*4. And even though Lomax's hands were cuffed behind his back at the time of the search, that fact is unavailing to Lomax because *Shakir*'s "lenient standard" requires only "a reasonable possibility" that Lomax could have accessed the gun hidden in the jacket he had dropped beside him. *See* 616 F.3d at 320–21. The District Court found that the jacket containing the gun was within Lomax's reach, and under those circumstances, he didn't need to be "an acrobat [or] a Houdini" to access it. *See United States v. Myers*, 308 F.3d 251, 267 (3d Cir. 2002) (quoting *United States v. Abdul-Saboor*, 85 F.3d 664, 669 (D.C. Cir. 1996)).

Lomax urges us to ignore these factual findings, claiming they are "undermin[ed]" by the District Court's "fail[ure] to make explicit credibility determinations in the face of conflicting testimony on critical factual matters." Lomax Br. 14–15. We cannot do so. A district court need not reconcile conflicting accounts and "make . . . express credibility determinations" where its findings obviously "derive[] from [the] conclusion that the [officers] were credible and that [the defendant] was not." *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010). We ask only whether the court's findings were clearly erroneous. *See United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). Here, where Knarr's testimony was "coherent and plausible," we have no reason to believe "a mistake has been committed"—let alone the "definite and firm conviction" the clear error

4

standard requires. *Cf. United States v. Igbonwa*, 120 F.3d 437, 440–41 (3d Cir. 1997).

Accordingly, the District Court did not err when it denied Lomax's motion to suppress.

II

Lomax also contends the District Court committed legal error when it designated him an armed career criminal. The career offender enhancement of the Armed Career Criminal Act (ACCA) applies when a defendant has three prior convictions for a violent felony or "serious drug offense," which is defined to include state-law offenses "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(1), (e)(2)(A)(ii). According to Lomax, neither his 2006 marijuana conviction nor his 2008 conviction for the sale of cocaine qualify as ACCA predicates. We address each argument separately.

A

In 2006 Lomax was convicted of possession with intent to deliver marijuana in violation of section 780-113(a)(30) of the Pennsylvania Crimes Code. Although that crime carries with it a statutory maximum of five years' imprisonment, 35 Pa. Stat. Ann. § 780-113(f)(2), Lomax was subject to a maximum sentence of ten years because he was a recidivist. *See id.* § 780-115. As the District Court explained, "it would seem that the 2006 marijuana conviction qualifies as a serious drug offense under the ACCA because the offense is punishable by up to ten years in prison." *United States v. Lomax*, 2017 WL

5

878404, at *3 (M.D. Pa. Mar. 6, 2017).

Lomax counters that his 2006 conviction cannot be a serious drug offense because, under *Mathis v. United States*, 136 S. Ct. 2243 (2016), "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." Lomax Br. 28–29 (citing *Mathis*, 136 S. Ct. at 2251). Specifically, he argues that the recidivist statute (section 780-115) is broader than ACCA's definition of a serious drug offense since it "does not distinguish between controlled substances and counterfeit controlled substances" and instead increases the penalties for distributing either. *Id.* at 28.

Lomax's argument fails because it is based on the fallacy that the ACCA predicate offense is section 780-115.[2] The true predicate offense in this case is section 780-113(a)(30). *See Lomax*, 2017 WL 878404, at *4 (explaining that section 780-115 "simply . . . enhances a sentence for a substantive offense occurring under section 780-113(a)(30)"); *see also Commonwealth v. Aponte*, 855 A.2d 800, 808–09 (Pa. 2004). The Supreme Court reached the same conclusion under very similar circumstances in *United States v. Rodriquez*, 553 U.S. 377 (2008), where it considered whether a drug offense carrying a ten-year sentence as a result of a Washington recidivism provision like

---

[2] Our dissenting colleague makes the same mistake. As the cases cited by the dissent make clear—*see, e.g.*, *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (focusing on "the elements of the crime *of conviction*" (emphasis added)), and *Descamps v. United States*, 570 U.S. 254, 261 (2013) (centering analysis on "a *conviction* under that law" (emphasis added))—the focus of the categorical approach is the crime *of conviction*. Lomax was charged and convicted under section 780-113(a)(30), while his sentence was imposed consistent with section 780-115.

section 780-115 was a serious drug offense under ACCA. *Id.* at 382–83. The Court

rejected the same categorical-approach argument Lomax advances here, explaining that

*Mathis*'s predecessor, *Taylor v. United States*, 495 U.S. 575 (1990), had "no connection"

to this particular ACCA issue. *Rodriquez*, 553 U.S. at 387. Faced with this binding

precedent, the only response Lomax can muster is that "*Rodriquez* predates *Mathis*,"

Reply Br. 2–3, but he does not explain why *Mathis*—which reaffirmed *Taylor*'s

categorical approach—leads to a different outcome here. Accordingly, we follow

*Rodriquez* and hold that Lomax's 2006 marijuana conviction under section

780-113(a)(30) is a serious drug offense as defined by ACCA.

B

We turn next to Lomax's 2008 conviction for possession with intent to deliver

cocaine. Lomax concedes that he was charged under 35 Pa. Stat. Ann. § 780-113(a)(30),

a felony punishable by up to ten years' imprisonment and a $100,000 fine. But he argues

that an "ambigu[ity]" arose when both the written plea colloquy and the sentencing court

referred to a seven-year sentence—a penalty associated with third-degree felonies in

Pennsylvania[3]—rather than a ten-year sentence. Lomax Br. 26.

The District Court rejected this argument, finding that this discrepancy was

"simply a mistake" because 35 Pa. Stat. Ann. § 780-113(a)(30) was the only cited

offense, and Lomax admitted to delivering cocaine as charged. *Lomax*, 2017 WL 878404,

---

[3] 18 Pa. Cons. Stat. §§ 106(b)(4), 1101(3).

7

at *1–2. The District Court did not err when it concluded that such a "mistake . . . does not control" for ACCA purposes, *id.*, and Lomax cites no authority that would convince us otherwise.

In sum, because Lomax's 2006 and 2008 convictions both qualify as ACCA predicate offenses, the District Court did not err in sentencing Lomax as a career offender.

*    *    *

For the reasons stated, we will affirm the District Court's judgment of conviction and sentence.

_____

AMBRO, <u>Circuit Judge</u>, dissenting

I agree with my colleagues that the District Court did not err in denying Reginald Lomax's motion to suppress and that his 2008 conviction for possession with intent to deliver cocaine is a serious drug offense under the Armed Career Criminal Act ("ACCA"). They and I part ways, however, as to Lomax's 2006 conviction for possession with intent to deliver marijuana ("2006 conviction"). Because I believe their analysis of the conviction disregards our own case law and Supreme Court precedent, I respectfully dissent in part.

## I.      Supreme Court precedent directs us to apply the categorical approach.

I begin with ACCA's text. It states a defendant may be imprisoned for at least 15 years if he has three previous convictions for a violent felony, serious drug offense, or both. In relevant part, it defines "serious drug offense" as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

The Supreme Court has given us a framework for deciding if a conviction qualifies as a "serious drug offense." It has told us to apply the categorical approach, "focus[ing] solely on whether the elements of the crime of conviction sufficiently match the elements of [ACCA]. . . ." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If

1

they do, the conviction is, in legalese, an "ACCA predicate." However, if the statute "sweeps more broadly . . . , a conviction under that law cannot count as [such]. . . ." *Descamps v. United States*, 570 U.S. 254, 261 (2013). Thus, in the context of our case, our mandate is clear: we must compare Lomax's 2006 conviction to the elements of ACCA. His conviction is an ACCA offense if its elements correspond to those of ACCA. However, if the elements of his conviction are broader, it is not a serious drug offense and cannot be used to enhance his sentence.

My colleagues do not agree. They claim the categorical approach "ha[s] 'no connection' to this particular ACCA issue (*i.e.*, convictions for serious drug offenses)" and rely on the Supreme Court's decision in *United States v. Rodriquez*, 553 U.S. 377 (2008), in support of their position. Majority Op. at 7 (quoting *Rodriquez*, 553 U.S. at 387). But *Rodriquez* did nothing to jettison the categorical approach. Indeed, our Circuit and our sister Circuits still apply the categorical approach in the wake of *Rodriquez. See United States v. Tucker*, 703 F.3d 205, 209-10 (3d Cir. 2012) (employing the categorical approach to conclude that "neither of [Appellant's] prior convictions qualif[y] as a 'serious drug offense'"); *see also United States v. White*, 837 F.3d 1225, 1229 (11th Cir. 2016) (per curiam) ("[T]he categorical approach requires us to determine whether first-degree possession of marijuana and cocaine trafficking . . . fall within the definition of a serious drug offense set forth in . . . ACCA."); *United States v. Buie*, 547 F.3d 401, 405 (2d Cir. 2008) (stating *Rodriquez* "do[es] not establish any exception to the categorical approach for a case" involving serious drug offenses). More importantly, the Supreme Court has repeatedly affirmed the categorical approach, *see, e.g.*, *Mathis*, 136 S. Ct. at

2

2248, and has specified that it applies to ACCA in its entirety, *see Taylor v. United States,* 495 U.S. 575, 600 (1990) ("[Section] 924(e) mandates a formal categorical approach. . . ."); *see also Carachuri-Rosendo v. Holder*, 560 U.S. 563, 577 n.11 (2010) (noting *Rodriquez* "employed" the categorical approach).

Thus, in light of binding precedent, I am not persuaded that the categorical approach is inapplicable here. By overlooking it, my colleagues adopt a holding that has no basis in our own case law or decades of Supreme Court precedent.

## II. The recidivism statute is the predicate offense.

Moving on to the statute of conviction, the parties dispute whether the predicate offense is the marijuana statute (§ 780-113(a)(30) of the Pennsylvania Crimes Code) or the recidivism statute (§ 780-115 of the Pennsylvania Crimes Code). My colleagues contend the former is the statute of conviction. They again rely on *Rodriquez* and tell us the Supreme Court reached the same conclusion there.

*Rodriquez*, however, did not reach that holding. Nor did it categorically exclude recidivism statutes from qualifying as ACCA predicates. To the contrary, it instructed us to consider recidivism statutes to determine the "maximum term of imprisonment" for purposes of ACCA. 553 U.S. at 393 ("[W]e hold that the 'maximum term of imprisonment . . . prescribed by law' for the state drug convictions at issue in this case was the 10–year maximum set by the [state] recidivist provision." (second alteration in original)). Its holding is apt here, as Lomax's 2006 conviction was based on a recidivism statute. Accordingly, we must look to that statute (§ 780-115) to calculate the maximum term of imprisonment in this case.

3

Both the Government and the majority acknowledge this point, but maintain that § 780-113(a)(30) (*i.e.*, the substantive statute for marijuana offenses) is the predicate offense. I disagree. No court has stated that the substantive statute is in play here. Nor has any court adopted the majority's position that the substantive statute lays out the elements of the offense but the recidivism statute lists the maximum term of imprisonment. Instead, courts have focused their analysis on the recidivism statute and have concluded that it specifies the predicate offense. *See, e.g.*, *United States v. Weekes*, 611 F.3d 68, 72 (1st Cir. 2010) (Souter, J.) ("*Rodriquez* instructs us to look to 'the maximum term prescribed by the relevant criminal statute. . . .'" (quoting 553 U.S. at 391)); *United States v. Hill*, 539 F.3d 1213, 1220 (10th Cir. 2008) ("Focusing on the maximum sentence for the predicate crime of conviction is mandated by the Supreme Court's analysis in *Rodriquez*."), *overruled on other grounds by United States v. Brooks*, 751 F.3d 1204 (10th Cir. 2014); *United States v. Staggs*, 527 F.3d 680, 682 (8th Cir. 2008) ("[T]he [*Rodriquez*] Court determined that the relevant law is the provision[] prescribing the maximum term for *both* a first offense *and* a second or subsequent offense." (emphases in original) (internal quotation marks omitted)).

While none of these cases are binding, we should be "mindful of our obligation to avoid [C]ircuit conflict" or depart from other Circuits' reading of Supreme Court precedent. *PNC Bank Del. v. F/V Miss Laura*, 381 F.3d 183, 186 (3d Cir. 2004). In line with these observations, the conclusion for me is simple. The predicate offense for Lomax's 2006 conviction is the recidivism statute, § 780-115, and the elements of the substantive statute have no controlling weight in our analysis.

4

**III.    Under the categorical approach, the recidivism statute does not spell out a serious drug offense.**

To recap, we must apply the categorical approach to the recidivism statute, § 780-115.  In order to do so, we start with the text of the statute.  In full it states:

> (a) Any person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act [35 Pa. Cons. Stat. § 780-113(a)(30)[1]] or of a similar offense under any statute of the United States or of any state may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized, or both.
>
> (b) For purposes of this section, an offense is considered a second or subsequent offense, if, prior to the commission of the second offense, the offender has at any time been convicted under clause (30) of subsection (a) of section 13 [35 Pa. Cons. Stat. § 780-113(a)(30)] of this act or of a similar offense under any statute of the United States or of any state relating to controlled substances.

35 Pa. Cons. Stat. § 780-115 (footnote omitted).  As noted, § 780-115 contains two subsections.  The first subsection lists the recidivism enhancement for "a second or subsequent offense." *Id.* § 780-115(a).  The second subsection states the enhancement applies if an individual has a previous conviction under § 780-113(a)(30). *See id.* § 780-115(b).  As Lomax points out, § 780-113(a)(30) penalizes individuals for distributing or possessing controlled substances *or* counterfeit controlled substances. *See supra* note 1 (explaining the reach of § 780-113(a)(30)).  Thus, under the categorical approach an individual may be convicted under § 780-115 even if he has a previous conviction for a counterfeit controlled substance.

---

[1] This provision criminalizes the delivery or possession of controlled or counterfeit controlled substances. *See* 35 Pa. Cons. Stat. § 780-113(a)(30) (prohibiting "[1] the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act . . . or [2] knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance").

5

This is broader than the terms of ACCA, as the latter only includes controlled substances offenses as defined in 21 U.S.C. § 802.  Moreover, if we turn to § 802, it explicitly excludes a counterfeit substance from its definition of "controlled substance."  *Compare* 21 U.S.C. § 802(6) (defining "controlled substance"), *with* 21 U.S.C. § 802(7) (defining "counterfeit substance").

Consequently, § 780-115 criminalizes conduct that is outside the realm of ACCA, and it cannot sustain Lomax's ACCA-enhanced sentence.  As such, I part with the District Court's holding that the 2006 conviction was an ACCA predicate, and I would vacate Lomax's sentence and remand it for resentencing.

## IV.    Even if the substantive statute was the predicate offense, it would still fail to specify a serious drug offense.

My conclusion remains unchanged even if I accept the majority's position that Lomax was convicted under the substantive statute, § 780-113(a)(30).  Under its statutory scheme, an individual convicted of a marijuana offense may be imprisoned for a maximum term of five years.  *See* 35 Pa. Cons. Stat. § 780-113(f)(2).  This is not enough for ACCA, which states serious drug offenses carry "a maximum term of imprisonment of ten years or more."  18 U.S.C. § 924(e)(2)(A)(ii).  Accordingly, § 780-113(a)(30) cannot qualify as an ACCA predicate.

\*         \*         \*         \*         \*

Per Supreme Court precedent, we must apply the categorical approach to determine if a conviction is a serious drug offense under ACCA.  Here it dictates that neither the recidivism statute nor the marijuana statute are serious drug offenses, as both

6

statutes criminalize conduct that exceeds the scope of ACCA.  Thus Lomax's enhanced sentence should be vacated and remanded for resentencing.

My colleagues not only reach the opposite conclusion, but they also fail to apply the categorical approach.  They discount decades of Supreme Court precedent and go against our own case law to reach their holding.  *See, e.g.*, *Taylor*, 495 U.S. at 600; *Tucker*, 703 F.3d at 209-10.  In the end, their analysis has drastic consequences for Lomax, saddling him with a 15-year sentence for an offense that does not match ACCA's terms.  Because I cannot join their reasoning, I respectfully dissent in part.